## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: | Chapter 11<br>Subchapter V |
| **DIGITALXMEDIA, LLC,** | |
| **Debtor.** | Case No. 23-53526-PMB |

## AMENDED PLAN OF REORGANIZATION

### Dated this 14th day of December, 2023

Filed by:

**DIGITALXMEDIA, LLC**

Attorney for Debtor
Will B. Geer
Caitlyn Powers
Rountree, Leitman Klein & Geer, LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
wgeer@rlkglaw.com
cpowers@rlkglaw.com
(404) 584-1238

COMES NOW digitalXmedia, LLC, Debtor and Debtor in possession in the above-captioned case (the "**Debtor**"), and, pursuant to sections 1123, 1189, and 1190 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), proposes this Plan of Reorganization (the "**Plan**") for the resolution of the Claims against Debtor.  Debtor is the proponent of this Plan as required under section 1191 of the Bankruptcy Code.

## Article 1
## Contents of the Plan; Required Disclosures

1.1     *Subchapter V Plan of Reorganization.* This Plan is filed under Subchapter V of Chapter 11 of the Bankruptcy Code.

1.2     *History of the Debtor's Business Operations.*

The Debtor operates a business that provides marketing services to clients through month-to-month subscriptions. The owners and operators of the Debtor are Sanarr McLaughlin and Alexis Day.

1.3     *Current Management and Employees.*

1.3.1     Directors and Officers of Reorganized Debtor.

The Debtor's members are Sanarr McLaughlin and Alexis Day.

1.3.2     Insiders Employed by Reorganized Debtor.

The Debtor employs Ms. McLaughlin whose duties will involve all aspects of management of the Debtor, including management of finances, daily operations, management of independent contracts, brand marketing, client account management, and business development. Ms. McLaughlin does not anticipate receiving any compensation from the Debtor during the Plan. Ms. Day will not be employed by the Debtor.

1.4     *Liquidation Analysis.*

Holders of claims would not receive any greater return in a liquidation of Debtor's assets. Moreover, in a liquidation, the Subchapter V Trustee or the chapter 7 trustee would incur costs associated with liquidation, such as auctioneer or other professional fees associated with the administration and sale of the Debtor's assets. The details of a hypothetical liquidation are as follows: the Debtor has unencumbered assets totaling approximately $23,475.15, with general unsecured claims totaling $310,196.73. Assets disposed of by "liquidation" or "fire" sale generally generate significantly less proceeds than assets that are marketed and sold as a going concern. Additionally, a Chapter 7 trustee would incur trustee's fees pursuant to § 326(a) or § 330 of the Bankruptcy Code.[1] After payment of administrative and priority claims, a Chapter 7 liquidation

---

[1]11 USC § 326(a) states that a Chapter 7 trustee would incur trustee's fees equal to 25% of the first $5,000 of Liquidation Value of Assets; 10% of amount in excess of $5,000 but not in excess of $50,000 of

would result in no recovery to general unsecured creditors. A copy of the Liquidation Analysis conducted by the Debtor is attached hereto as **Exhibit A** and incorporated herein by reference.

      1.5    *Alternative Confirmation Standards Under Section 1191(a) and (b).* Debtor seeks to confirm this Plan by obtaining the consent of all Classes provided for in this Plan by a majority in number and two-thirds in amount of Allowed Claims actually voting. If Debtor succeeds in obtaining the consent of all Classes, the provisions of the Plan referencing and operating under section 1191(a) of the Bankruptcy Code will apply. If Debtor is unable to obtain the consent of all Classes, Debtor will request the Court to confirm the Plan under 1191(b). In this case, the provisions of the Plan referencing and operating under section 1191(b) of the Bankruptcy Code will apply.

      1.6    *Property and Claims.* This Plan deals with all property of Debtor and provides for treatment of all Claims against Debtor and its property.

### Article 2
### Definitions and General Provisions

      For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan. Any term that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

      2.1    *Definitions.* The following terms, when used in this Plan, shall have the following meaning:

      2.1.1    "*Administrative Expense Claim*" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

      2.1.2    "*Allowed Claim*" shall mean a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of Debtor under sections 502 or 503 of the Bankruptcy Code.

      2.1.3    "*Allowed Secured Claim*" shall mean the amount of the allowed Claim held by parties secured by property of Debtor which is equal to the amount provided by the Plan unless such other amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

---

Liquidation Value of Assets; 5% of any amount in excess of $50,000 but not in excess of $1,000,000; 3% of any amount in excess of $1,000,000 of the Liquidation Value of Asset, and commissions for auctioneers for personal property generally is equivalent to ten (10%) percent of the gross sales price and commissions for real property brokers is generally six percent (6%) of the gross sales price. In addition, the attorney for the Chapter 7 trustee would incur attorney's fees as would the current Chapter 11 attorneys.

11 USC § 330 provides for reasonable compensation for actual, necessary service rendered by the trustee and reimbursement for actual, necessary expenses.

2.1.4 "*Allowed Unsecured Claim*" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5 "*Assets*" means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

2.1.6 "*Avoidance Action*" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7 "*Ballot*" means each of the ballot forms that are distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8 "*Bankruptcy Case*" means the chapter 11 case initiated by Debtor's filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under Subchapter V of Chapter 11 of the Bankruptcy Code.

2.1.9 "*Bankruptcy Code*" means title 11 of the United States Code.

2.1.10 "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

2.1.11 "*Bankruptcy Rules*" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12 "*Business Day*" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

2.1.13 "*Cash*" means legal tender of the United States of America and equivalents thereof.

2.1.14 "*Causes of Action*" means all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15 "*Chapter 11*" means chapter 11 of the Bankruptcy Code.

2.1.16  "*Claim*" means a claim against Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17  "*Classes*" means a category of Claims described in this Plan.

2.1.18  "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.19  "*Confirmation Hearing*" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1191 of the Bankruptcy Code, as such hearing may be continued.

2.1.20  "*Confirmation Order*" means the order confirming this Plan pursuant to section 1191 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtor.

2.1.21  "*Debtor*" shall mean digitalXmedia, LLC, the Debtor in this Bankruptcy Case.

2.1.22  "*Disallowed Claim*" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.23  "*Disputed Claim*" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.24  "*Distribution*" means any distribution by Debtor or reorganized Debtor to a Holder of an Allowed Claim.

2.1.25  "*District Court*" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.26  "*Effective Date*" means the First Business Day that is thirty (30) days after the Confirmation Order becomes a final, non-appealable order.

2.1.27  "*Estate*" means, with regard to Debtor, the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the

commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise. In the event that this Plan is confirmed by the Bankruptcy Court under section 1191(b) of the Bankruptcy Code, such definition shall also include (1) all of the property defined by section 541 of the Bankruptcy Code and (2) any earning from services performed by the Debtor, both that Debtor acquires after the commencement of the Bankruptcy Case but before the Bankruptcy Case is closed, dismissed, or converted to a case under Chapter 7, 12, or 13, whichever occurs first.

2.1.28  "*Executory Contract or Unexpired Lease*" means all executory contracts and unexpired leases to which Debtor is a party.

2.1.29  "*Final Distribution*" means the Distribution by Debtor or reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.30  "*Final Distribution Date*" means the Distribution Date on which the Final Distribution is made.

2.1.31  "*Final Order*" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.32  "*Holder*" means a holder of a Claim or Interest, as applicable.

2.1.33  "*Impaired*" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.34  "*Initial Distribution Date*" means the Effective Date.

2.1.35  "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.36  "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.37 "*Petition Date*" means April 13, 2023.

2.1.38  "*Plan*" means this plan of reorganization as same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.39  "*Priority Claim*" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.40 "*Priority Tax Claim*" means a Claim against Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.41 "*Professional Compensation*" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by Debtor and the unsecured creditors committee, if any, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.42 "*Record Date*" means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

2.1.43 "*Record Holder*" means the Holder of a Claim as of the Record Date.

2.1.44 [*Reserved*].

2.1.45 "*Retained Action*" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action relating to strict enforcement of Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.46 "*Schedules*" means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.47 "*Secured Claim*" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.48 "*Subchapter V Trustee*" means Gary Murphey, or any successor to Gary Murphey, appointed by the United States Trustee under section 1183(a) of the Bankruptcy Code to serve as the Subchapter V Trustee in this Bankruptcy Case.

2.1.49 "*Subordinated Claim*" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.50 "*Unimpaired*" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.51 "*Unsecured Claim*" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2    *Time*.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.3    *Events of Default*.    Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor have provided the Holder with a written notice of a change of address.  Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor have fifteen (15) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 15th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).  The Holder must send such Default Notice to Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to Will B. Geer (Rountree Leitman Klein & Geer, LLC) at the address reflected in the then current directory of the State of Bar of Georgia.  Debtor shall have fifteen (15) days or thirty (30) days (as applicable) from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default.  Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example a default under Class 1 shall not constitute a default under Class 2).  In the event of default, creditors may seek the enforcement of the plan terms in the bankruptcy court and, if necessary, their rights under applicable state law.

2.4    *Notices*.  All notices under the Plan shall be in writing.  Unless otherwise specifically provided here in, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case, unless Debtor have provided such Holder with written notice of change of address for Debtor, with a copy via email or fax and certified mail to the Debtor's attorney, Will B. Geer, at the address reflected in the then current directory of the State Bar of Georgia.  Receipt of notice by the Debtor's attorney shall not be deemed receipt by Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor have not received a written notice of a change of address, or (d) if the Holder's address is not listed

8

in the Schedules, at the last known address of such Holder according to the Debtor's books and records. Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

### Article 3
### Classification of Claims and Interests

3.1    Summary.    The categories of Claims and Interests set forth below classify all Claims against Debtor for all purposes of this Plan.  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

3.2    Classes:

3.2.1    Class 1 shall consist of General Unsecured Creditors ("**GUCs**").

3.2.2    Class 2 shall consist of Equity Interest Holders.

### Article 4
### Treatment of Claims and Interests

The Classes, the treatment of each Class, and the voting rights of each Class are set forth below.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution or amount creditor would receive over the life of the Plan as designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

**4.1 Class 1: General Unsecured Claims:**

Class 1 shall consist of General Unsecured Claims including any potential deficiency claims pursuant to 11 U.S.C. §§ 506 and 522(f).

*Confirmation under Section 1191(a)*

If the Plan is confirmed under 11 U.S.C. § 1191(a), the Debtor shall pay the General Unsecured Creditors in accordance with Section 4.3 below.

Debtor anticipates and projects but does not warrant the following Holders of Class 1 Claims and the distributions under Class 1:

| Holder | Claim Amount | Pro Rata |
|---|---|---|
| Adprime Media, Inc. | $ 77,154.72 | 24.9% |
| American Express - 1002 | $ 3,907.70 | 1.3% |
| American Express - 2003 | $ 11,330.44 | 3.7% |
| Capital One Spark Business | $ 5,354.22 | 1.7% |
| Chase Bank | $ 2,587.09 | 0.8% |
| Harborside Journal of Clinical Oncology | $ 5,423.00 | 1.7% |
| Katon Partners LLC dba AdfireHealth | $ 124,427.06 | 40.1% |
| Massachusetts Medical Society | $ 18,963.50 | 6.1% |
| Practice Fusion | $ 31,049.00 | 10.0% |
| WebHealth Network Media, Inc. | $ 30,000.00 | 9.7% |
| Totals: | $ 310,196.73 | 100.0% |

If the Plan is confirmed under 11 U.S.C. § 1191(b), Class 1 shall be treated the same as if the Plan was confirmed under 11 U.S.C. § 1191(a).

Notwithstanding anything else in this document to the contrary, any claim listed above shall be reduced by any payment received by the creditor holding such claim from any third party or other obligor and Debtor's obligations hereunder shall be reduced accordingly.

The Claims of the Class 1 Creditors are Impaired by the Plan, and the holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 4.2    Class 2: Equity Interest Holders

Class 2 consists of Ms. McLaughlin and Ms. Day as the equity interest holders of the Debtor. Ms. McLaughlin and Ms. Day shall retain their respective interests in the reorganized Debtor as 50-50 members of the Debtor.

### 4.3    Plan Payment Procedures

4.3.1    "Administrative and General Unsecured Creditors Payment" means the projected disposable income of the Debtor to be received in the five-year period beginning on the date that

the first payment is due to the General Unsecured Creditors under this Plan, which will be applied to make payments under the Plan, as more specifically set forth on **Exhibit "B"** to this Plan. The Administrative and General Unsecured Creditors Payment shall be fixed based upon the amount set forth on **Exhibit "B"** to this Plan as attached hereto, which is approximately $23,013.71.

4.3.2    The Debtor shall pay the Administrative and General Unsecured Creditors Payment in satisfaction of its obligations to (i) administrative claims and (ii) Class 1 General Unsecured Creditors.

4.3.3    The timing of such payments shall be as follows: Debtor shall pay the Administrative and General Unsecured Creditors Payment commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day) for a total of 60 months.

4.3.4    Such payments shall be disbursed as follows:

4.3.4.1    First, to any allowed administrative expenses until paid in full. The Debtor anticipates and projects the following administrative expenses: (1) Rountree Leitman Klein & Geer, LLC as counsel for the Debtor; (2) Gary Murphey as Subchapter V Trustee; and (3) Welch Financial Advisors as accountant for the Debtor.

4.3.4.2    Upon payment in full of any allowed administrative expenses, all remaining payments shall be paid to Class 1 General Unsecured Creditors pro rata.

4.3.4.3    For the avoidance of doubt, priority claims of the Internal Revenue Service shall be treated as provided for in Section 6.7 below.


**Article 5**
**Subchapter V Trustee**

5.1    *Subchapter V Trustee.*

The Subchapter V Trustee was appointed by the United States Trustee in this case to perform the duties described in section 1183(b) of the Bankruptcy Code, one of which is to facilitate the development of a consensual plan of reorganization.

5.2    *Termination of the Subchapter V Trustee's Services*

The services of the Subchapter V Trustee shall terminate upon "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code. Debtor shall directly make all payments required under this Plan, including the first payments required for substantial consummation of the Plan.

5.3    *Compensation of the Subchapter V Trustee*

The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 U.S.C. §§ 330 and 503(b)(3) periodically following confirmation of the Plan in accordance with the Plan.

Debtor shall pay all compensation awarded the Subchapter V Trustee the later of (i) 15 days after the entry if a Final Order approving the fees of the Subchapter V Trustee and (ii) on the Effective Date if Confirmation is consensual and in accordance with the Plan Payment Procedures in Section 4.3 of the Plan if Confirmation is by cramdown.

## Article 6
## Treatment of Unclassified Claims

6.1     *Summary.*  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on or receiving Distributions under the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims, other than that of the Subchapter V Trustee addressed above, are instead treated separately in accordance with Article 6 of the Plan and in accordance with the requirements set forth in sections 1129(a)(9)(A) and 1191(e) of the Bankruptcy Code, as applicable.

6.2     *Rountree, Leitman Klein & Geer, LLC.* With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained the law firm of Rountree Leitman Klein & Geer, LLC (the "**Firm**") to serve as bankruptcy counsel.  As set forth in the employment application and supporting documents, the Firm received a prepetition retainer in the amount of $25,000.00, including the filing fee. As of the date hereof, the fees and expenses incurred by the Firm have exceeded the retainer.  Debtor shall pay any unpaid Administrative Expense Claim held by the Firm as permitted by 11 U.S.C. § 1191(e) unless otherwise agreed to by the Firm. The Firm shall retain its security interest in the pre-petition retainer.

6.3     *Administrative Expense Claims.*  Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtor, (iv) if the Plan is confirmed under section 1191(b) of the Bankruptcy Code, pro-rata  over the period (a) starting on the first day of the month immediately following the month in which the order on the application by the holder of an Allowed Administrative Expenses Claim for compensation became a Final Order and (b) ending on the first day of the month in which the Final Distribution is due, or (v) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business after the Filing Date, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Effective Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

6.4     [*Reserved*]

12

6.5    *Professional Fees.* Other than the Subchapter V Trustee, any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

6.6    *Post-Confirmation Professional Fees.* Debtor may pay professional fees incurred after confirmation of the Plan without Court approval, other than the fees of the Subchapter V Trustee, which must be approved by the Court.

6.7    *Priority Claims*. Each holder of a priority tax claim, if one exists, will be paid upon terms consistent with § 1129(a)(9)(C) of the Code. The Internal Revenue Service has filed a proof of claim asserting a $275.74 priority claim. If valid, it will be paid upon terms consistent with § 1129(a)(9).

**Article 7**
**Means for the Implementation of the Plan**

7.1    *Parties Responsible for Implementation of the Plan.* Upon confirmation, Debtor will be charged with administration of the Plan. Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtor will file all post-confirmation reports required by the United States Trustee's office or by the Subchapter V Trustee. Debtor will also file the necessary final reports and may apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process. Debtor shall be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtor.

7.2    *Sources of Cash for Distribution*.

*7.2.1*    The source of funds for the payments pursuant to the Plan is the Debtor's continued business operations and contributions from Ms. McLaughlin and Ms. Day. The monthly budgets for Ms. McLaughlin and Ms. Day are attached hereto as **Exhibit B** to this Plan.

*7.2.2*    A copy of Debtor's post Confirmation projections are attached hereto as **Exhibit C** to this Plan. Debtor's projections will be based on Debtor's previous periods income and reasonable estimates as to Debtor's upcoming contracts.

*7.2.3*    Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

*7.2.4*    *Preservation of Causes of Action*. In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the

foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action). The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise. Debtor specifically reserves any cause of action against any of Debtor's account debtors related to underpayment or non-payment of any fees, or other monies or receivables due. The Plan shall not be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. Debtor expressly reserves the right to exercise any and all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. This Plan is filed with a full reservation of rights. Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to applicable law. No delay on the part of Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. This Plan is filed with a full reservation of rights.

     *7.2.5    Effectuating Documents, Further Transactions*. Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

     *7.2.6    Exemption from Certain Transfer Taxes and Recording Fees*. Pursuant to 11 U.S.C. § 1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

     *7.2.7   Further Authorization*. Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

7.2.8   *Liabilities of Debtor*.   Debtor will not have any liabilities except those expressly stated or assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Petition Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of post-confirmation the expense claims.

## Article 8
## Distributions

8.1   *Disbursing Agent.*   Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtor.

8.2   *Distributions of Cash*.   Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

8.3   *No Interest on Claims or Interests*.   Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

8.4   *Delivery of Distributions*.   The Distribution to a Holder of an Allowed Claim shall be made by Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtor is notified by such Holder in writing of such Holder's then-current address, at which time Debtor shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within six (6) months of return shall be irrevocably retained by Debtor and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to Debtor and not claimed within six (6) months of return shall be irrevocably retained by Debtor notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtor to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("Unsecured Distribution Refusal"), Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim.  Accordingly, in the event of an Unsecured Distribution Refusal, Debtor shall be relieved of any obligation to make said payment

or Distribution and Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtor to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied. In the event of a Secured or Priority Distribution Refusal, any obligation of Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period"). Only in the event of such notice to Debtor shall Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume. The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court. Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Debtor shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

8.5     *Distributions to Holders as of the Record Date*. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

8.6     *Fractional Dollars*. Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Debtor's option the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

8.7     *Withholding Taxes*. Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

8.8     *De Minimis Payments*. The Reorganized Debtor will not issue payments under this Plan on account of any Claim for which the Distribution would equal $15.00 or less.

**Article 9**
**Procedures for Treating and Resolving Disputed Claims**

9.1     *Objections to Claims*.  Debtor shall be entitled to object to Claims, provided, however, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan. The deadline to object to Claims is 60 days after the Effective Date.

9.2     *No Distributions Pending Allowance*.  Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

9.3     *Resolution of Claims Objections*.  On and after the Effective Date, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

**Article 10**
**Provision for Assumption of Unexpired**
**Leases and Executory Contracts**

*10.1     Provisions Regarding Executory Contracts.*

10.1.1   Rejection of Unexpired Leases and Executory Contracts.

Any unexpired leases or executory contracts which are not already assumed or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date. Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before thirty (30) days after the Confirmation Date.  Any claims which are not timely filed will be disallowed and discharged.

**Article 11**
**Effect of Plan on Claims and Interests**

*11.1     Vesting of Debtor's Assets*.    Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the earlier of the Effective Date and the entry of a Final Decree, Debtor may operate its business and use, acquire, and dispose of property

and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order. If the Plan is confirmed under §1191(b), the Debtor's Assets shall remain property of the estate pursuant to 11 U.S.C. §1186.

11.2    *Discharge of Debtor.*

11.2.1  Discharge if Plan Confirmed Under Section 1141(a).  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

11.2.2  Discharge if Plan Confirmed Under Section 1191(b). If the Plan is confirmed under section 1191(b), as soon as practicable after completion by the Debtor of the payment of all projected disposable income and any other payments expressly provided for under this Plan due within five (5) years from the Effective Date, or as the Court may fix within the Confirmation Order, the Court shall grant Debtor a discharge of its debts as provided for in 11 U.S.C. § 1192.

11.3    *Setoffs*. Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder.

11.4    *Exculpation and Limitation of Liability.*  Under the Plan, Debtor's current and/or pre-Effective Date employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorney, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to,

or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan. Fees and expenses which Debtor owes to its Professionals and to the Subchapter V Trustee are excluded from this Exculpation.

11.5    [*Reserved*].

11.6    [*Reserved*].

11.7    *Effect of Confirmation*.

> 11.7.1  <u>Binding Effect</u>. On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against Debtor except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan. Should the Debtor default under this Plan, subject to the notice and cure provisions contained in Sections 2.3 and 2.4 herein, Creditors shall be entitled to enforce their pre-confirmation Claims.

> 11.7.2  <u>Effect of Confirmation on Automatic Stay</u>. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate. If the Plan is confirmed under §1191(b), the automatic stay shall stay in effect.

> 11.7.3  <u>Filing of Reports</u>. Debtor shall file all reports required by the Bankruptcy Code, Bankruptcy Rules, the Subchapter V Trustee, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

> 11.7.4  <u>Post-Effective Date Retention of Professionals</u>. Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and Debtor may employ and pay professionals in their ordinary course of business.

## Article 12
## Conditions Precedent

12.1    *Conditions to the Effective Date.* The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 12.2 of this Plan.

> 12.1.1  The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

12.1.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to Debtor in its reasonable discretion.

12.1.3 Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

12.2    *Waiver of Conditions to Confirmation or Consummation*.  The conditions set forth in Article 12.1 of this Plan may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor).  The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**Article 13**
**Retention and Scope of Jurisdiction of the Bankruptcy Court**

13.1    *Retention of Jurisdiction*.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

13.1.1    To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

13.1.2    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

13.1.3    To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

13.1.4    To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

13.1.5    To hear and rule upon all applications for Professional Compensation, including the Subchapter V Trustee;

13.1.6    To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

*13.1.7*     To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

*13.1.8*     To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

*13.1.9*     To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

*13.1.10*    To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

*13.1.11*    To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

*13.1.12*    To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

*13.1.13*    To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

*13.1.14*    To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of its assets during the Bankruptcy Case; and

*13.1.15*    To enter a final decree;

*13.1.16*    To enter an order of discharge; and

*13.1.17*    To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

*13.2     Alternative Jurisdiction.*  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.  If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.  Notwithstanding anything to the contrary herein, Debtor shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to Debtor) to which Debtor is a party in any state or local court having jurisdiction over such action.

*13.3    Final Decree.*  If the Plan is confirmed under 1191(a), the Bankruptcy Court may, upon application of Debtor, at any time after "substantial consummation" of the Plan as defined in section 1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.  If the Plan is confirmed under 1191(b), the Bankruptcy Court may, upon application of Debtor, at any time after Final Distribution, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.

## Article 14
## Miscellaneous Provisions

14.1    *Modification of the Plan*.  Debtor shall be allowed to modify this Plan pursuant to section 1193 of the Bankruptcy Code to the extent applicable law permits.

14.2    *Pre-Confirmation Modifications.* Debtor may modify the Plan at any time before the Confirmation Hearing by filing the modification with the Court.

14.3    *Modification After Confirmation And Prior to Substantial Consummation.* Debtor may modify the Plan upon a showing that circumstances warrant such a modification and after a notice and hearing. If the Plan was confirmed under section 1191(a), any holder of a claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

14.4    *Modification After Substantial Consummation.* If the Plan has been confirmed under section 1191(b), Debtor may modify the Plan upon a showing the circumstances warrant such a modification and after a notice and hearing.

14.5    *Allocation of Plan Distributions Between Principal and Interest*.  To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

Case 23-53526-pmb    Doc 59    Filed 12/14/23    Entered 12/14/23 11:34:35    Desc Main
Document      Page 23 of 32

14.6 *Applicable Law*. Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

14.7 *Preparation of Estate Returns and Resolution of Tax Claims*. Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

14.8 *Headings*. The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

14.9 *Revocation of Plan*. Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

14.10 *No Admissions; Objection to Claims*. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

14.11 *No Bar to Suits*. Except as otherwise provided in Article 11 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any document filed by Debtor in connection with this Bankruptcy Case or whether or not any payment was made or is made on account of any Claim. Without limitation, Debtor retains and reserves the right to prosecute Retained Actions.

14.12 *Exhibits/Schedules*. All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

## Article 15
## Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this

discussion is intended to be general in nature only.  No specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.  Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. The Debtor assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest.  Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Respectfully submitted this  14th day of December, 2023.

**ROUNTREE LEITMAN KLEIN& GEER, LLC**

*/s/ Caitlyn Powers*
Will Geer, Ga. Bar No. 940493
Caitlyn Powers, Ga. Bar No. 856354
Century Plaza I
2987 Clairmont Road, Suite 175
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wgeer@rlkglaw.com
cpowers@rlkglaw.com
Attorneys for the Debtor in Possession

## Exhibit A - Liquidation Analysis

**Assets**

| | | FMV | | Liquidation Value |
|---|---|---|---|---|
| | Cash in accounts | $ | 10,331.95 | $ | 10,331.95 |
| | A/R | $ | 3,483.50 | $ | 3,483.50 |
| | Claims against third parties* | $ | - | $ | - |
| | Malpractice against accountant | $ | 8,390.00 | $ | 6,292.50 |
| | Loan Due from Sanarr McLaughlin | $ | 1,269.70 | $ | 1,269.70 |
| **Total Assets** | | $ | 23,475.15 | $ | 20,107.95 |
| | | | | | |
| **Total Unliened Assets**** | | $ | 23,475.15 | $ | 20,107.95 |

**Administrative Claims**

| | | | |
|---|---|---|---|
| Chapter 7 | | | |
| | Professional fees | $ | 10,000.00 |
| | Trustee Fees*** | $ | 1,005.40 |
| Chapter 11 | | | |
| | 2 weeks operations | $ | 1,800.00 |
| | Professional fees | $ | 10,000.00 |
| Total Administrative Claims | | $ | 22,805.40 |
| | | | |
| Available for distribution after admin claims paid in full**** | | $ | (2,697.45) |
| | | | |
| **Priority Claims** | | $ | 275.74 |
| | | | |
| **Available for distribution after priority claims paid in full** | | $ | (2,973.19) |

| **General Unsecured Claims** | | **Chapter 7 Distribution******* | | **Total Claim** | **Pro Rata % of Total Claim** |
|---|---|---|---|---|---|
| | Adprime Media, Inc. | $ | - | $ 77,154.72 | 24.9% |
| | American Express - 1002 | $ | - | $ 3,907.70 | 1.3% |
| | American Express - 2003 | $ | - | $ 11,330.44 | 3.7% |
| | Capital One Spark Business | $ | - | $ 5,354.22 | 1.7% |
| | Chase Bank | $ | - | $ 2,587.09 | 0.8% |
| | Harborside Journal of Clinical Oncology | $ | - | $ 5,423.00 | 1.7% |
| | Katon Partners LLC dba AdfireHealth | $ | - | $ 124,427.06 | 40.1% |
| | Massachusetts Medical Society | $ | - | $ 18,963.50 | 6.1% |
| | Practice Fusion | $ | - | $ 31,049.00 | 10.0% |
| | WebHealth Network Media, Inc. | $ | - | $ 30,000.00 | 9.7% |
| | Totals: | $ | - | $ 310,196.73 | 100% |

*Preference or avoidance actions are unliquidated and transferees have substantial defenses, such that pursuit of such claims may not result in any value to the estate. Therefore, such claims shall not be considered for this analysis.

** Liquidation value is 75% of FMV based on "fire sale" nature and costs of liquidation such as auctioneer fees

*** 5% of unliened assets which would be administered by Chapter 7 Trustee

****Assumes abandonment by Chapter 7 trustee on all liened assets

*****Assumes No Distributions to General Unsecured Claims in Hypothetical Chapter 7

Percentage Distribution in Chapter 7 Liquidation
     0.0%

<u>**Exhibit B**</u>

<u>**Sanarr McLaughlin Monthly Budget**</u>

| | |
|---|---|
| <u>**Monthly Net Income**</u> | <u>$ 7,182.14</u> |
| <u>**Monthly Expenses**</u> | |
| Mortgage | $ 1,100.00 |
| Personal Debts (CC, Car Loan, etc.) | $ 2,146.00 |
| Utilities (Electric, Water, Internet, Phone) | $   813.00 |
| Home Maintenance (Lawn, Exterminator, Equipment Lease) | $   463.00 |
| Insurance & Medical (Car, Medical, Caregiver) | $ 1,481.00 |
| Living Expenses (Groceries, Toiletries, Gas, etc.) | $   700.00 |
| Other incidentals (meals, parking, car maintenance, etc.) | $   250.00 |
| <u>**Total**</u> | <u>$ 6,953.00</u> |
| <u>**Monthly Disposable Income**</u> | <u>$   229.14</u> |

**Alexis Day Monthly Budget**

| | | |
|---|---|---:|
| **Monthly Net Income** | | $ 7,037.04 |
| **Monthly Expenses** | | |
| Mortgage | $ | 1,500.00 |
| Home Warranty | $ | 70.00 |
| Pest Control | $ | 100.00 |
| Gas | $ | 150.00 |
| Electric | $ | 150.00 |
| Water | $ | 75.00 |
| Internet | $ | 190.00 |
| Cell Phone | $ | 268.00 |
| Car Insurance | $ | 195.00 |
| Personal Loans | $ | 1,500.00 |
| Credit Cards | $ | 1,700.00 |
| Student Loans | $ | 300.00 |
| Prescriptions | $ | 50.00 |
| Groceries | $ | 200.00 |
| Car Gas | $ | 100.00 |
| Incidentals (Meals, parking, maintenance, etc.) | $ | 250.00 |
| **Total** | $ | 6,798.00 |
| **Monthly Disposable Income** | $ | 239.04 |

## Exhibit C
## Year One Projections

**Business Income**

| | |
|---|---|
| Customer Subscriptions | $ 36,457.20 |
| Owner Contributions | $ 6,000.00 |
| Ad Hoc Marketing Services | $ 4,500.00 |
| **Total Income** | **$ 46,957.20** |

**Expenses**

| | |
|---|---|
| Payment Processing Fees | $ 2,817.43 |
| Payroll Services | $ 1,824.00 |
| Payroll | $ 28,200.00 |
| Payroll Taxes | $ 2,538.00 |
| Software / IT | $ 1,704.00 |
| Internet and Phone | $ 119.88 |
| General Liability Insurance (prepaid) | $ - |
| Workers' Comp Insurance | $ 1,296.00 |
| Accounting Services | $ 1,800.00 |
| Advertising/Marketing | $ 2,000.00 |
| **Total Expenses** | **$ 42,299.31** |

**Net Operating Income**            **$ 4,657.89**

**Projected Plan Payments**

| | |
|---|---|
| IRS Priority Claim* | $ 275.74 |
| Administrive Expense Claims | $ 4,382.15 |
| **Total Payments**\*\* | **$ 4,657.89** |

\*Total claim to be paid in full on the Effective Date.
\*\* Total Amount to be paid in accordance with Section 4.3 of the Plan after the IRS Priority Claim is paid in full.

**Year Two Projections**

**Business Income**

| | |
|---|---|
| Customer Subscriptions | $ 36,457.20 |
| Owner Contributions | $  6,000.00 |
| Ad Hoc Marketing Services | $  4,500.00 |
| **Total Income** | **$ 46,957.20** |

**Expenses**

| | |
|---|---|
| Payment Processing Fees | $  2,817.43 |
| Payroll Services | $  1,824.00 |
| Payroll | $ 28,200.00 |
| Payroll Taxes | $  2,538.00 |
| Software / IT | $  1,704.00 |
| Internet and Phone | $     119.88 |
| General Liability Insurance (prepaid) | $        - |
| Workers' Comp Insurance | $  1,296.00 |
| Accounting Services | $  1,800.00 |
| Advertising/Marketing | $  2,000.00 |
| **Total Expenses** | **$ 42,299.31** |

**Net Operating Income**          **$  4,657.89**

**Projected Plan Payments**

| | |
|---|---|
| Administrive Expense Claims | $  4,657.89 |
| **Total Payments** | **$  4,657.89** |

**Year Three Projections**

**Business Income**

| | |
|---|---|
| Customer Subscriptions | $ 36,457.20 |
| Owner Contributions | $  6,000.00 |
| Ad Hoc Marketing Services | $  4,500.00 |
| **Total Income** | $ 46,957.20 |

**Expenses**

| | |
|---|---|
| Payment Processing Fees | $  2,817.43 |
| Payroll Services | $  1,824.00 |
| Payroll | $ 28,200.00 |
| Payroll Taxes | $  2,538.00 |
| Software / IT | $  1,704.00 |
| Internet and Phone | $    119.88 |
| General Liability Insurance (prepaid) | $      - |
| Workers' Comp Insurance | $  1,296.00 |
| Accounting Services | $  1,800.00 |
| Advertising/Marketing | $  2,000.00 |
| **Total Expenses** | $ 42,299.31 |

**Net Operating Income**        $  4,657.89

**Projected Plan Payments**

| | |
|---|---|
| Administrive Expense | |
| Claims/Class 1 General | |
| Unsecured Claims | $  4,657.89 |
| **Total Payments** | $  4,657.89 |

**Year Four Projections**

**Business Income**

| | | |
|---|---|---|
| Customer Subscriptions | $ | 36,457.20 |
| Owner Contributions | $ | 6,000.00 |
| Ad Hoc Marketing Services | $ | 4,500.00 |
| **Total Income** | **$** | **46,957.20** |

**Expenses**

| | | |
|---|---|---|
| Payment Processing Fees | $ | 2,817.43 |
| Payroll Services | $ | 1,824.00 |
| Payroll | $ | 28,200.00 |
| Payroll Taxes | $ | 2,538.00 |
| Software / IT | $ | 1,704.00 |
| Internet and Phone | $ | 119.88 |
| General Liability Insurance (prepaid) | $ | - |
| Workers' Comp Insurance | $ | 1,296.00 |
| Accounting Services | $ | 1,800.00 |
| Advertising/Marketing | $ | 2,000.00 |
| **Total Expenses** | **$** | **42,299.31** |

**Net Operating Income** | **$** | **4,657.89**

**Projected Plan Payments**

| | | |
|---|---|---|
| Class 1 General Unsecured Claims | $ | 4,657.89 |
| **Total Payments** | **$** | **4,657.89** |

**Year Five Projections**

**Business Income**

| | | |
|---|---|---|
| Customer Subscriptions | $ 36,457.20 | |
| Owner Contributions | $ 6,000.00 | |
| Ad Hoc Marketing Services | $ 4,500.00 | |
| **Total Income** | $ 46,957.20 | |

**Expenses**

| | | |
|---|---|---|
| Payment Processing Fees | $ 2,817.43 | |
| Payroll Services | $ 1,824.00 | |
| Payroll | $ 28,200.00 | |
| Payroll Taxes | $ 2,538.00 | |
| Software / IT | $ 1,704.00 | |
| Internet and Phone | $ 119.88 | |
| General Liability Insurance (prepaid) | $ - | |
| Workers' Comp Insurance | $ 1,296.00 | |
| Accounting Services | $ 1,800.00 | |
| Advertising/Marketing | $ 2,000.00 | |
| **Total Expenses** | $ 42,299.31 | |

**Net Operating Income**  $ 4,657.89

**Projected Plan Payments**

| | | |
|---|---|---|
| Class 1 General Unsecured Claims | $ 4,657.89 | |
| **Total Payments** | $ 4,657.89 | |